LEE v. NEW RIVER & POCAHONTAS CONSOL. COAL CO.

(Circuit Court of Appeals, Fourth Circuit. March 6, 1913.)

No. 1,084.

DEATH (§ 24*)—MINORS—NEGLIGENCE OF BENEFICIARY—IMPUTATION TO ADMINISTRATOR.

Where a father, who, under the West Virginia law, was not only the sole guardian of his minor son, but also entitled to the entire recovery in an action for the son's wrongful death, knowingly permitted the boy to work as a trapper in a coal mine, where he was himself employed, for 26 hours consecutively without sleep, which incapacitated the child from protecting himself from dangers accompanying the work, and by reason of this he was killed by a motor while asleep on the track in the mine, the father's default was a bar to his claim of damages for the child's death, and was also imputable to, and precluded a recovery by, the child's administrator.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 25, 26; Dec. Dig. § 24.*]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action by W. L. Lee, as administrator of the estate of Charles Wellman, deceased, against the New River & Pocahontas Consolidated Coal Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Henry S. Cato and Adam B. Littlepage, both of Charleston, W. Va. (Cato & Bledsoe, of Charleston, W. Va., on the brief), for plaintiff in error.

C. W. Dillon, of Fayetteville, W. Va. (Dillon & Nuckolls, of Fayetteville, W. Va., on the brief), for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before PRITCHARD, Circuit Judge, and DAYTON and SMITH, District Judges.

SMITH, District Judge. This case comes up upon a writ of error to a judgment in favor of the defendant in an action at law to recover damages for the defendant's negligently causing the death of a boy. The defendant is a coal mining corporation, and employs among its employés those who are denominated "trappers." The duties of a trapper appear to have been to open and close a trapdoor in the mine, which is closed or kept closed by the air pressure in the mine. The performance of this duty requires no great amount of strength or intelligence, as it means simply the opening and closing of a door whenever it is necessary for the purpose of allowing the passage of cars loaded with coal from the mine, or their return empty to the mine. One Charles Wellman was employed as a trapper for this purpose. He was a youth of about 14, and seems to have been perfectly capable in all respects of performing his duties and understanding them thoroughly. He had acquired the nickname of "Speedy" from his activity and quickness in performing his work. He lived with his father, and his father was also employed in the mine. On the day of the accident which resulted in his death he had gone back to work after having performed his full duty the day before and during the night preceding; that is, the evidence showed that he had worked on the 16th day of March from about 7 o'clock in the morning until about 6 o'clock in the afternoon, with the exception of an hour at dinner; that he had worked from about half past 7 o'clock on the evening of the 16th until nearly 6 o'clock on the morning of the 17th, and had again gone to work at about 7 o'clock on the morning of the 17th, and was killed about half past 9. He was killed by an electric motor bringing cars loaded with coal out of the mine, and when it approached where the boy was he was lying apparently asleep, with his head resting upon one of the rails. When discovered by the brakeman on the motor, it was too late to permit the stopping of the motor, which ran over the boy, crushing his head, and causing almost immediate death.

The evidence shows that the working of the boy for this length of time, say practically the whole time from 7 o'clock in the morning of one day until half past 9 o'clock in the morning of the next day, with comparatively short stops for his meals, was with the knowledge of his father, who worked in the mine, and that when the boy went back to work on the morning of the second day, after having been at work all of the preceding night, it was with the knowledge and assent of his father. There is some contest about what was the age of the boy. The law of West Virginia prohibits the employment in coal mines of any boy under the age of 14 years, and requires that, in cases of doubt, the parents or guardians of such boy shall furnish affidavits of their ages, and that any operator, agent, or mine foreman who shall knowingly violate the law, or if any person shall knowingly make a false statement as to the age of the boy, they shall, upon conviction, be fined or imprisoned as the statute directs. There is some conflict in the testimony as to whether or not the affidavits or statements were

furnished in this case. The evidence for the defendants is to the effect that they did have written statements from his father that the boy was over the age of 14. This is denied by his father, and there is evidence that the boy at the time of his death was under 14 years of age. The testimony of his mother is that he was born on the 19th day of November, 1895, and according to the evidence his death occurred on the 17th day of March, 1909; so that he was under 14 years of age at the time of his death. If it is proved, therefore, that he had been employed by the mining company with the knowledge that he was under the age of 14, the parties responsible for that employment would be liable to the penalty imposed by the statute; and it also may be that the knowingly employing by the mine company of a boy under the age of 14 years would be presumptive negligence on the part of the mining company. This last question, however, does not arise for decision at this time. There was evidence to the fact that his parents had made statements that he was over the age of 14 years.

The defendant interposed the defense that under the laws of West Virginia the father of the deceased was entitled to the benefit of whatever would be recovered under this action for the death of the deceased. The action is brought by a third person as administrator for the estate of the deceased boy; but under the law of West Virginia, while this action is permitted to be brought by the administrator, yet the amount, when recovered, goes to the person who under the law of West Virginia would be entitled to inherit, had the deceased died intestate. In the present case it is admitted that Elisha Wellman, the father of the boy who was killed, is the person who would be sole beneficiary and entitled to the entire benefit of whatever might be recovered by the administrator in this cause. The answer of the defendant is in effect a plea in bar, that as the death of the boy was due to the fact that the said Elisha Wellman, the sole beneficiary, permitted, induced, and compelled his son to enter the mine and work on the day that he was killed, knowing that he was under age, and knowing, further, that he had been already working for such a number of hours as would unfit him to carry on his work without sleep afterwards, to permit a recovery in this case would be to permit the father to recover in a case where the accident resulted from his own wrong, and that under the rule of law he is not under such circumstances entitled to recover, and that his bar in this respect bars also the suit by the administrator.

The evidence disclosed that the boy had been at work consecutively before he was killed for over 26 hours without sleep. It may be that, for one engaged in a hazardous occupation, the working beyond a certain number of hours without rest has the effect of unfitting him to protect himself from the hazards of the occupation; and it may be, further, that the permitting by an employer, such as the defendant coal mining company, any one, and especially a boy, to continue working in its employment, when that employment is a hazardous one, for a number of hours consecutively without sleep, with such result as would physically unfit the employé from protecting himself from the hazards of that occupation, might be construed to be negligence on the part of

the employer. Assuming, for the purposes of the decision in this case, that such is the case, and that the permitting by the coal mining company of this boy to work consecutively for 26 hours without sleep was negligence on the part of the employer, inasmuch as it permitted the employé to work when he was physically incapacitated from protecting himself from the dangers accompanying such work, yet that would still leave open the question, on the plea in bar interposed by the defendant, whether if the coal mining company was negligent in this respect, so as to authorize a recovery by the boy if he was living, or by any one who did not knowingly contribute to his death, can the father recover where he himself did knowingly contribute?

The general rule of law is that where the death of a minor child is due to the negligence or the willful action of his father, and that father is the sole beneficiary, he is not entitled to recover. This rule would appear to be founded upon a very salutary rule of public policy. The minor child is supposed to be under the control and orders of his father. To allow one who has the control over a minor child to knowingly and willfully subject him to a hazard which may result in his death, and then allow the person so acting to recover damages for the death occasioned by his wrongful action in this regard, would be to offer a premium to the misuse by a parent or guardian or other person entitled of his powers over a minor. It is a question of public policy, and it is on this question of public policy, as we understand it, that the general rule of law above referred to has been enforced. It may be that to effect this bar the act of the party permitting or directing the minor's conduct must be one of an active kind by one qualified to know the danger to which the minor would be subjected. If the father were of weak mind, or if he were a person not capable of knowing the danger, or if the child's parent to recover were his mother, who also may not have been capable of estimating the danger, so as to rob the directions given of the element of intention to subject the minor to the risks of a hazardous occupation or act which might redound to the benefit of the person giving such instructions, the rule might well not apply. But where the case presented is that of one who is the party charged by law naturally with the control of and dominion over the minor, and he is a person who knows and can realize the dangers which the minor may be subjected to, or may subject himself to, under the instructions or with the knowledge of such party, and such party is one who will be the beneficiary in the case of the death of the minor, it would seem that the rule does apply, and does apply for the salutary reason that in such case the law will not permit the temptation to be offered to an unnatural parent of subjecting a minor in his control and charge to improper risks for the benefit of the parent.

In the present case, if there were no conflict on that point, it might be a question for the jury; but the evidence is by the father's own admission and testimony that he knew the boy was employed in the mine, that he knew the boy had been worked or overworked the night before, and he knew the boy had gone back to work again that morning. His testimony is that on that very morning he was aware that his son had gone ahead of him in the mine to go to work. His father was a mine

worker, had been engaged in mining for more than 7 years, had been working in the very mine where his son was killed for near 6 years, and therefore must be presumed to have known of all the dangers attending his son's occupation. Knowing all those dangers, and knowing that the boy had been working consecutively for 24 hours, and presumably, therefore, knowing that to work without sleep for that time was calculated to so impair the faculties of a boy of that age that he would not be able to protect himself against the hazards of his occupation, he yet permitted him to go back to work on the morning of the 17th, and in our view, as he is the sole beneficiary who would be entitled to receive whatever would be recovered in this action, to allow him to recover would be to allow him to get the benefit of a recovery despite his own wrong, and would be in violation of the salutary rule of law we have mentioned above. We hold, further, that the bar against the father's recovery in this respect will attach to any recovery by the administrator of the boy, who is practically a trustee for the father, for whose sole benefit he would recover in this action; and it follows from this that the judge below was correct in instructing the jury that if they found under the circumstances of this case that the boy's father, who was the sole beneficiary, was himself guilty of negligence in respect to the boy's employment on the occasion of his death, then the defense interposed operated, and there can be no recovery, and the judgment below is affirmed.

Affirmed.